The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.



/S/ RUSS KENDIG

Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) CHAPTER 11 |
| HP OHIO CORP. & OP OHIO CORP., | ) |
| | ) CASE NO. 09-64631 |
| Debtors. | ) ADV. NO. 09-6131 |
| | ) |
| | ) & |
| JUDY OLSZESKI HOLCOMB & | ) |
| JANE OLSZESKI TORTOLA, JOAN | ) CASE NO. 09-64633 |
| OLSZESKI & FREDA'S SHOPS, INC., | ) ADV. NO. 09-6132 |
| | ) |
| Plaintiffs, | ) JUDGE RUSS KENDIG |
| | ) |
| v. | ) |
| | ) |
| HG OHIO CORP., OP OHIO CORP. & | ) |
| JAMES WILSON, | ) **MEMORANDUM OF OPINION** |
| | ) **(NOT FOR PUBLICATION)** |
| Defendants. | ) |
| | ) |

On June 18, 2010, plaintiffs Judy Olszeski Holcomb, Joan Olszeski, and Jane Olszeski Tortola (collectively "Olszeski creditors") filed a motion for partial summary judgment against

defendant James Wilson ("Wilson").[1] This motion is now before the Court.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the general order of reference entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

## BACKGROUND

*A. Undisputed Facts*

On May 31, 2006, the Olszeski creditors sold their respective interests in Olszeski Properties, Inc. to Wilson. The assets sold included a shopping center in Hartville, Ohio known as Hartville Center; a shopping center in Green, Ohio known as Green Super Center and a shopping center in Plain Township, Stark County, Ohio known as Oakwood Plaza. Wilson ultimately transferred Oakwood Plaza to OP Ohio Corporation ("OP Ohio") and transferred Hartville Center and Green Super Center to HP Ohio Corporation ("HP Ohio"). Wilson is the sole shareholder in both companies.

As part of the purchase agreement, OP Ohio and Wilson signed a promissory note ("Note") in favor of the Olszeski creditors. The Note provides that a single balloon payment of $3,530,000 was due on January 1, 2009. The purchase agreement provides that the Note is without interest. Wilson admits that he has not made any payment on the Note. (Amended Answer ¶ 12).

In addition, the parties signed a no lien agreement, which provides in pertinent part that the "[s]eller hereby expressly and forever waives any right to secure, attach or place any lien of any kind upon any asset, income or stock of HG Ohio Corporation." The parties also signed a subordination agreement, by which the Olszeski creditors agreed to subordinate any lien they hold on the HP Ohio's property to Huntington National Bank.

On June 5, 2009, the Olszeski creditors filed a lawsuit in the Common Pleas Court for Stark County, Ohio against the defendants. On November 11, 2008, HP Ohio and OP Ohio filed bankruptcy. On February 11, 2010, the state court concluded that it lacked jurisdiction over all of the defendants despite the fact that Wilson never filed for bankruptcy protection. On March 3, 2010, this Court issued an order declining to remand the claims against Wilson back to state court.

---

[1] The motion is styled as a motion for summary judgment. However, because the motion does not address all of the issues between the parties, it is a motion for partial summary judgment.

On April 21, 2010, the Olszeski creditors filed an amended complaint alleging five causes of action. On May 5, 2010, Wilson answered, pleaded numerous affirmative defenses and filed fourteen counterclaims. The motion for partial summary judgment is limited to Count I of the amended complaint and all of Wilson's counterclaims.

*B. Disputed Facts*

The parties disagree whether the Olszeski creditors made disparaging comments about the defendants to Giant Eagle Corporation ("Giant Eagle"), which was the anchor tenant at Oakwood Plaza. The Olszeski creditors have submitted affidavits by Joan Olszeski and Jane Olszeski Tortola, which state that the Olszeski creditors never disparaged the defendants.

Wilson disagrees. He alleges that the Olszeski creditors made disclosures about the defendants' financial condition to Giant Eagle and that these disclosures had a negative effect on OP Ohio's business. Wilson has provided two affidavits, which he argues support this assertion.

The first affidavit was executed by Michael D. Goth ("Goth"), who identifies himself as the CFO of OP Ohio. Goth states that OP Ohio was having a difficult time obtaining Giant Eagle's permission to rent out space at Oakwood Plaza. On May 20, 2009, a phone conference was held between various OP Ohio stakeholders and the attorney representing the Olszeski creditors, Andrew Zumbar ("Zumbar"). At the meeting, Zumbar allegedly stated that the Olszeski creditors had been in contact with Giant Eagle regarding the financial condition of the defendants.

After the meeting, the OP Ohio stakeholders allegedly discussed the Olszeski creditors' motivation for sharing financial information about the defendants with Giant Eagle. They theorized that Giant Eagle wished to buy the defendants' properties under favorable conditions, and that the Olszeski creditors wanted the properties sold so that they could collect on the Note. Thus, they speculated that Giant Eagle and the Olszeski creditors were conspiring to create financial pressure on the defendants to sell their properties.

The second affidavit was executed by Eric E. Gass ("Gass"), who identifies himself as an associate at Pine Street Investment Company. Gass states that he was a participant in the conference call and that he heard Zumbar state that "he would not be surprised if one or more of his clients had been speaking to Giant Eagle."

## LAW AND ANALYSIS

*A. Standard of Review*

The procedure for granting summary judgment is found in Federal Rule of Civil Procedure 56(c), made applicable to this proceeding through Federal Rule of Bankruptcy Procedure 7056, which provides in part:

3

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970). Summary judgment is not appropriate if a material dispute exists over the facts, "that is, if evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party shows a presumptive entitlement to summary judgment if it points to the absence of any factual support for the plaintiff's claim. Summary judgment is then appropriate unless the nonmoving party can point out facts that demonstrate the need for a trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). In defeating a motion for summary judgment, a plaintiff cannot merely rest on the pleadings. First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289 (1968).

### B. Count I of the Amended Complaint

Count I of the amended complaint seeks judgment on the Note in the amount of $3,530,000 plus the statutory rate of pre-judgment interest. The Olszeski creditors show a presumptive entitlement to summary judgment by pointing out that the defendants did not pay the amount owing on the Note by the due date. Wilson admits that the defendants did not pay. Furthermore, he does not argue any of the affirmative defenses that he pleads. Accordingly, the Olszeski creditors are entitled to judgment in the principal amount of $3,530,000.

However, the Olszeski creditors are not entitled to pre-judgment interest. The Olszeski creditors argue that because the Note does not provide an interest rate, the statutory rate applies. However, Ohio Revised Code § 1303.13(A) states that "unless otherwise provided in the instrument . . . [a]n instrument is not payable with interest." In addition, the purchase agreement states that the Note is without interest. See Ohio Rev. Code § 1303.13(B) (stating that the Court may look at documents beyond the Note to ascertain the interest rate).

Accordingly, the Olszeski creditors' motion for summary judgment on Count I of the amended complaint is granted to the extent that it seeks judgment on the Note in the principal amount of $3,530,000 and is denied to the extent that it seeks pre-judgment interest.

### C. Counts I, II and III of the Counterclaim

Count I states that the Olszeski creditors "meddled" in the affairs of the defendants and

4

made it difficult for the them to repay their loan obligations. Count II states that Olszeski creditors "purposely caused and attempted to cause third persons not to enter into or continue business relationships with the [d]efendants." Count III states that the Olszeski creditors "have engaged in a deceptive trade practice in making false representations of fact disparaging the [d]efendants and the [d]efendants' businesses."

Counts I, II, and III fail to state a claim for at least two reasons. First, the Counts fail to identify a specific tort or other legal theory that entitles Wilson to relief. *See* Fed. R. Civ. Pro. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Second, they fail to identify facts that support the conclusive allegations that the Olszeski creditors "meddled," prevented business relationships with third parties, or engaged in deceptive trade practices. *See* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (requiring that the pleader provide factual allegations to support the elements of a cause of action).

Wilson argues that the sufficiency of the claims is not the proper subject of a motion for summary judgment. But even if the Court were to believe that Counts I, II, and III raise a claim for tortious interference with a business relationship, summary judgment against Wilson would be appropriate. To prevail on a claim of tortious interference with a business relationship, a plaintiff must show that the defendant caused him actual harm. A & B-Abell Elevator Co. v. Columbus/Central Ohio Bldg. & Constr. Trades Counsel, 651 N.E.2d 1283, 1294 (Ohio 1995). The Olszeski creditors correctly point out that there is no evidence of actual harm. Goth's affidavit alleges that the defendants speculated that the Olszeski creditors caused them harm but provides absolutely no evidence.

Accordingly, the Olszeski creditors' motion for summary judgment is granted with regard to Counts I, II and III of the counterclaim.

### D. Counts IV and V of the Counterclaim

Counts IV and V allege that the Olszeski creditors have violated the no lien agreement and subordination agreement, respectively, by bringing this action. These Counts are frivolous because the amended complaint does not seek to place a lien on the defendants' assets.

Accordingly, the Olszeski creditors' motion for summary judgment is granted with regard to Counts IV and V of the counterclaim.

### E. Counts VI through XIV of the Counterclaim

Counts VI through XI allege that HP and OP Ohio made fraudulent transfers to the Olszeski creditors. Count XII alleges that OP and HP Ohio paid illegal corporate dividends or distributions to the Olszeski creditors. Count XIII alleges that to the extent that the Olszeski creditors' claims in the present matter are allowed they should be subordinated to the other

creditors of HP and OP Ohio. Count XIV alleges that any claim filed by the Olszeski creditors in the bankruptcies of HP and OP Ohio should be disallowed.

The Olszeski creditors point out that these claims belong entirely to the debtors and not to Wilson. As such, Wilson lacks the standing to pursue them. United States v. Hayes, 515 U.S. 737, 742–743 (1984) (requiring that a party have a legally protected interest to have standing).

Wilson argues that he has a legally protected interest under Ohio Revised Code § 1303.35(D) as the accommodation party to a negotiable instrument. However, section 1303.35(D) applies only to two situations: first, when fraud has induced the accommodated party to sign the instrument with neither knowledge or reasonable opportunity to learn of its character or essential terms; and second, in cases where duress, lack of legal capacity, or illegality nullifies the obligation of the accommodated party. Claims VI through XIV implicate neither of these situations.

Accordingly, the Olszeski creditors' motion for summary judgment is granted with regard to Counts VI through XIV of the counterclaim.

An order will accompany this opinion.

#   #   #

Service List:

Judy Olszeski Holcomb
c/o Jack Cooper, Esq.
Day Ketterer Ltd.
PO Box 24213
Canton, OH 44702

Joan Olszeski
c/o Jack Cooper, Esq.
PO Box 24213
Canton, OH 44701-4213

Jane Olszeski Tortola
c/o Jack Cooper, Esq.
Day Ketterer Ltd.
PO Box 24213
Canton, OH 44701-4213

OP Ohio Corporation
c/o James G. Wilson
268 Main Street, Building One, Ste 7
Medfield, MA 02052

HG Ohio Corporation
c/o James G. Wilson
266 Main Street, Building One, Suite 7
Medfield, MA 02052

James G. Wilson
Pine Street Investment Co.
266 Main St, Bldg One
Medfield, MA 02052

Freda's Shops Inc.
c/o Jack Cooper, Esq.
Day Ketterer Ltd.
P.O. Box 24213
Canton, OH 44701

Jack B Cooper
Day Ketterer
200 Market Ave N
#300
Canton, OH 44701-4213

Anthony J DeGirolamo
116 Cleveland Ave., N.W.
Suite 307
Canton, OH 44702

Chrysanthe E Vassiles
Black McCuskey Souers and Arbaugh
220 Market Ave., South, Suite 1000
Canton, OH 44702